IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF FLORIDA
(West Palm Beach Division)

Case No:

CHRISTOPHER DeVITO,

    Plaintiff,

vs.

PALM BEACH COUNTY, a political
subdivision of the State of Florida,

    Defendant.

_____/

## Complaint for Damages and Other Relief

### Count I: Fourteenth Amendment Race Discrimination

Plaintiff, Christopher DeVito, sues defendant, Palm Beach County, a political subdivision of the State of Florida, and says:

### Introduction and Summary

1. This is a case about a hyper-politically-correct fire/rescue department that, **First**, issued a written warning to Christopher DeVito, a white, male district chief in the Palm Beach County Fire Rescue Department ("PBCFR") because a looking-for-trouble Black recruit reported (incorrectly, without any supporting evidence and in contradiction to evidence that Chief DeVito produced) that he heard Chief DeVito demean Latinos, and, **Second**, used an unconstitutionally broad and vague sexual-harassment policy to fire Chief DeVito because of a risqué (but consensual) texting relationship he had with a female fire-fighter/paramedic with a history of several real-life

sexual relationships with supervisory fire/rescue personnel.  He sues Palm Beach County pursuant to 42 U.S.C. § 1983 to enforce his rights under:

**One**, the Fourteenth Amendment's Equal Protection Clause, both as to race and sex discrimination;

**Two**, the First Amendment's Free Speech and Free Association clauses of the First Amendment to the United States Constitution, extended to the states by the Fourteenth Amendment;

**Three**, Title VII of the Civil Rights Act of 1964, as amended, and

**Four**, the Florida Civil Rights Act of 1992

He seeks damages, injunctive relief and his attorney fees, costs and litigation expenses.

2.   This is an action for declaratory and other relief brought pursuant 42 U.S.C. 1983 concerning District Chief DeVito rights under:

   a.   The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

   b.   The free-speech and freedom of association clauses of the First Amendment;

   c.   Title VII of the Civil Rights Act of 1964, as amended, and

   d.   The Florida Civil Rights Act of 1992.

3.   This Court has jurisdiction over Chief DeVito's federal claims pursuant to 42 U.S.C. 1983 and 28 U.S.C. §§ 1331 and 1343(a)(4).  It has supplemental jurisdiction over Chief DeVito's claims under the Florida Civil

Rights Act pursuant to 28 U.S.C. § 1367 because those claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. This cause of action accrued in Palm Beach County in the Southern District of Florida.

5. Chief DeVito is a white, male fire fighter who has been has been employed by the Palm Beach County Fire Rescue Department since WHEN; he has held the rank of District Chief since WHEN. As a district chief, Chief DeVito supervises eight battalions of fire-fighters in southern Palm Beach County.

6. Palm Beach County is:

   a. A political subdivision of the State of Florida which at all times material operated towards Chief DeVito under color of state law, and

   b. Chief DeVito's employer as envisioned by Title VII and the FCRA.

### Count I:  Fourteenth Amendment Race Discrimination

7. Chief DeVito realleges and adopts, as if fully set forth in Count I, the allegations of ¶¶ 1, 2(a), 3, 4, 5 and 6(a).

8. Chief DeVito was falsely accused in June 2020 by Jonathan Forrester – a Haitian-heritage fire-fighter recruit who is married to a woman of Mexican heritage – of stating "you speak that trash" within the hearing of

himself and Fire Fighter Sebastian Alvarado, as Fire Fighter Forrester was bi-lingually registering Spanish-speaking patients at a COVID-19 testing site.

9. Chief DeVito was actually speaking on his cell phone with Tony Tozzi, a battalion chief who was suggesting that he had enjoyed being away from PBCFR while being on vacation so much that he was considering leaving the department, to which Chief DeVito responded "quit talking that garbage."

10. Notwithstanding that:

a. Chief DeVito denied that he was making any reference to Spanish-speakers;

b. Chief Tozzi wrote a letter to PBCFR management confirming the cell-phone conversation that he and Chief DeVito were having;

c. Chief DeVito's cell-phone records confirmed that he was speaking with Chief Tozzi from 11:21 a.m. until 11:31 a.m. and from 11:34 a.m. until 11:45 a.m. June 19 – which is when Fire Fighter Forrester said the racist remark was made, and

d. Reginald Duren, the then-Fire Chief, told Chief DeVito at a Step 3 Grievance hearing that he did not believe that he had said anything discriminatory.

11. Chief Duren, who is Black, nonetheless issued a written warning to Chief DeVito about the incident, which became part of of Chief's personnel

file.

12. Captain Jeffery Newsome, who was then a vice president of the fire-fighters' union, quoted Chief Duren as saying that it he did not discipline Chief DeVito, there would be "backlash."

13. Based on Chief Duren's telling Chief DeVito that he did not believe that Chief DeVito had made any racially disparaging remarks, and Chief Duren's telling Captain Newsome that he was imposing discipline to avoid a "backlash," there is evidence from which jurors could reasonably conclude that Chief DeVito was disciplined:

    a. Without justification and

    b. Because of his race.

14. Race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment is an irreparable harm for which there is no adequate remedy at law.

15. Although a written reprimand is the lowest form of discipline:

    a. It is a public record that:

        i. falsely informed the fire-fighters and officers whom Chief DeVito commanded – a significant number of whom are either Black or Hispanic – that PBCFR had concluded that Chief DeVito had made a racially discriminatory statement;

        ii. would be available to any future potential employer of Chief Devito subsequent to his retirement from PBCFR.

      b.    It made Chief DeVito vulnerable for the following 12 months pursuant to PBCFR's progressive-discipline policy for an escalation of punishment for any violation he might commit (although there was none), and

      c.    It could not be grieved pursuant to PBCFR's collective-bargaining agreement with the fire-fighters' union.

16.    Because there was no appeal available to Chief DeVito, Chief Duren was Palm Beach County's decision maker and final policy maker for falsely declaring that Chief DeVito was guilty of using racially inappropriate language.

17.    As a direct, natural and proximate result of Palm Beach County's public-record declaration that Chief DeVito had engaged in racially discriminatory speech, Chief DeVito's reputation as a District Chief was damaged, which caused him a loss of prestige, a diminished employment record and emotional distress – for all of which he is entitled to damages.

18.    Chief DeVito is entitled by 42 U.S.C. § 1988(b) to recover his attorney's fees and litigation expenses for suing pursuant to § 1983 to vindicate his Fourteenth Amendment right to be free from racial discrimination.

WHEREFORE, plaintiff, District Chief Christopher DeVito prays that this Court will:

**One**, determine that Palm Beach County has discriminated against

Chief DeVito because of his race, in violation of the Equal Protection Clause of the Fourteenth Amendment;

**Two**, award Chief DeVito damages;

**Three**, enjoin Palm Beach County to revoke the written warning issued to Chief DeVito and to remove it from his personnel file;

**Four**, award Chief DeVito his reasonable attorney's fees and litigation expenses, and

**Five**, grant such other and further relief as is just.

**Count II:  Race Discrimination Under the Florida Civil Rights Act**

19.   Chief DeVito realleges and adopts, as if fully set forth in Count II, the allegations of ¶¶ 1, 2(e), 3, 4, 6(b), 8, 9, 10, 11, 12, 13, and 15.

20.   The Florida Civil Rights Act of 1992 ("FCRA") states at § 760.10(1)(a), FLA. STAT., that "[i]t is an unlawful employment practice for an employer. . .[t]o. . . discriminate against any individual with respect to. . . terms, conditions, or privileges of employment, because of such individual's race. . . ."

21.   Chief DeVito on September 22, 2020, filed a Charge of Discrimination with the Equal Employment Opportunity Commission concerning his being racially discriminatorily disciplined by Palm Beach County for making a racially discriminatory statement that he never uttered for no other reason than:

    a.   A black fire-fighter recruit had accused Chief DeVito of

doing so and,

  b. Chief Durden, who did not believe that Chief DeVito had made the statement, issued him a written warning because – as Chief Durden had told a union vice president – he feared that it he did not do so, there would be a "backlash."

 22. That charge of discrimination was, by operation of law, deemed cross filed with the Florida Commission on Human Relations, which did not within 180 days of its receipt of that charge make an adverse finding against Chief DeVito, who gives Chief DeVito the right to sue Palm Beach County.

 23. The FCRA provides at § 760.11(5), in pertinent part:

> In any civil action brought under this section, the court may issue an order prohibiting the discriminatory practice and providing affirmative relief from the effects of the practice. . . . The court may also award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries. . . .

 24. The FCRA further provides in that section that "[i]n any action or proceeding under this subsection, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. . . ."

 WHEREFORE, plaintiff, District Chief Christopher DeVito prays that this Court will:

 **One**, determine that Palm Beach County has discriminated against Chief DeVito because of his race, in violation of the Florida Civil Rights Act;

 **Two**, award Chief DeVito damages;

 **Three**, enjoin Palm Beach County to revoke the written warning issued

to Chief DeVito and to remove it from his personnel file;

**Four**, award Chief DeVito his reasonable attorney's fees and litigation expenses, and

**Five**, grant such other and further relief as is just.

### Count III:  Fourteenth Amendment Sex Discrimination

25. Chief DeVito realleges and adopts, as if fully set forth in Count III, the allegations of ¶¶ 1, 2(a), 3, 4, 5, and 6(a).

26. Palm Beach County terminated Chief DeVito August 23, 2022, based on his participation in a consensual, year-long texting/sexting relationship between him and a Elizabeth Suit, a female fire fighter/paramedic who:

    a. Did not complain about the texts going back-and-forth between the two, and

    b. Had a history of five real – as opposed to digital – sexual relationships with superior officers since joining the department in or about 2019:

        i. a captain with whom she was having a sexual relationship while she was a recruit going through the fire academy;

        ii. Jason Martino, a special-operations captain who testified during union arbitration about his 18-month relationship with Ms. Suit during Chief DeVito's union arbitration challenging his termination;

    iii. a Special Operations Driver Operator;

    iv. another Special Operations captain, and

    v. Lt. Rafael Suarez, her direct supervisor when she was assigned to Station 57 and he was a "floater" who would frequently be assigned to the dive-team at Station 57, which was one of the stations that Chief DeVito oversaw.

 27. Chief DeVito's termination was based on his alleged violation of:

  a. Fire/Rescue Policy FR-A-107, which:

    i. at ¶ 1(d)(v) prohibits Fire/Rescue personnel from "[s]exting or texting which **may be offensive** to others," (emphasis supplied), and

    ii. at ¶ 4(e) states, in pertinent part, in its definition or sexual harassment:

> Consenting relationship (sic) may constitute sexual harassment under this policy when a professional power differential exists between Fire Rescue personnel and a romantic or sexual relationship develops. There is a potential for abuse of power, even in relationships of apparent mutual consent. Fire Rescue strongly discourages sexual relationships between a supervisor and a subordinate[, and]

  b. County Policy CW-P-029, which similarly provides in its section on "Sexual Harassment" as constituting "Prohibited Conduct":

> Consenting relationship may constitute sexual harassment under this policy when a professional power differential exists between employees and a romantic or sexual relationship develops. There is a potential for abuse of power, even in relationships of apparent mutual consent. The County strongly discourages sexual relationships between a supervisor and a subordinate.

28. Although both the County and Fire/Rescue policies provide that "[s]exual harassment may occur among co-workers or when a person who is in a position to control, influence, or affect another individual's job or career standing uses this power to either coerce the subordinate into sexual relationships or punish a refusal to participate in sexual activity,"

   a. Fire Fighter/Paramedic, the alleged "victim" of Chief DeVito's alleged "sexual harassment," not only did not complain about Chief DeVito's behavior, but made it quite clear to PBCFR that she did not wish to be named as a complainant;

   b. No such allegations were contained in any charging document, and

   c. No evidence of any such behavior by Chief DeVito was brought forward during the disciplinary hearings leading to his termination nor in the union arbitration seeking to set aside his termination.

   d. As soon as Ms. Suit informed Chief DeVito that she had begun a romantic relationship with someone else and did not wish him to text her any longer, he stopped.

29. The relationship between Chief DeVito and Ms. Suit simply did not constitute sexual harassment, but rather was an intimate relationship between two consenting adults that is protected by the

First Amendment to the United States Constitution (as well as Article I, § 23 of the Florida Constitution, "Right of privacy").

30. Fire Chief Patrick Kennedy nonetheless terminated Chief DeVito for engaging in the consensual affair — but not Ms. Suit.

31. To the extent that Chief DeVito, a male, is being terminated for having been a party to a consensual, heterosexual relationship (although it was not very sexual since all they did was to text back and forth), but Ms. Suit was not similarly disciplined — notwithstanding her also repeatedly engaging in sexual relationships with male Fire Department members who outranked her, Chief DeVito's discipline violates his Fourteenth Amendment Right to Equal Protection.

32. Because there was no internal appellate provision available to Chief DeVito, Chief Kennedy was Palm Beach County's decision maker and final policy maker for Chief DeVito's termination.

33. As a direct, natural and proximate result of Palm Beach County's disciplining Chief DeVito in violation of his Fourteenth Amendment rights to equal proctection, Chief DeVito has been damaged, i.e., Chief DeVito has suffered a loss of prestige, a diminished employment record and emotional distress – for all of which he is entitled to damages.

34. Chief DeVito is entitled by 42 U.S.C. § 1988(b) to recover

his attorney's fees and litigation expenses for suing pursuant to § 1983 to vindicate his Fourteenth Amendment right to be free from sex discrimination.

WHEREFORE, plaintiff, District Chief Christopher DeVito prays that this Court will:

***One***, determine that Palm Beach County has discriminated against Chief DeVito because of his race, in violation of the Equal Protection Clause of the Fourteenth Amendment;

***Two***, award Chief DeVito damages;

***Three***, enjoin Palm Beach County to revoke the written warning issued to Chief DeVito and to remove it from his personnel file;

***Four***, award Chief DeVito his reasonable attorney's fees and litigation expenses, and

***Five***, grant such other and further relief as is just.

### Count IV:  Title VII Sex Discrimination

35. Chief DeVito realleges and adopts, as if fully set forth in Count III, the allegations of ¶¶ 1, 2(c), 3, 4, 5, 6(b), 26(a) and (b)(i)-(v), 27(a)(i) and (ii) and (b), (28)(a)-(d), 29, 30.

36. Chief DeVito on December 15, 2022, filed a Charge of Discrimination with the Equal Employment Opportunity Commission concerning his being wrongfully terminated based on allegations of sexual harassment.

37. The Department of Justice issued a notice of right to sue January 31, 2023, within 90 days of which this action is being filed.

38. Title VII of the Civil Rights Act of 1964 provides, in pertinent part ar 42 U.S.C. § 2000e(a)(1) that "[i]t shall be an unlawful employment practice for an employer . . . to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."

39. Title VII further provides at 42 U.S.C. § 2000e-5(k) that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party. . . a reasonable attorney's fee (including expert fees) as part of the costs.

WHEREFORE, plaintiff, District Chief Christopher DeVito prays that this Court will:

*One*, determine that Palm Beach County has discriminated against Chief DeVito because of his sex, in violation of the Title VII of the Civil Rights Act of 1964, as amended;

*Two*, award Chief DeVito damages;

*Three*, enjoin Palm Beach County to revoke the reinstate Chief DeVito;

*Four*, award Chief DeVito his reasonable attorney's fees and litigation expenses, and

*Five*, grant such other and further relief as is just.

**Count V:  Sex Discrimination Under the Florida Civil Rights Act**

40.    Chief DeVito realleges and adopts, as if fully set forth in Count III, the allegations of ¶¶ 1, 2(d), 3, 4, 5, 6(b), 26(a) and (b)(i)-(v), 27(a)(i) and (ii) and (b), (28)(a)-(d), 29, 30 and 36.

41.    Chief DeVit's Charge of Discrimination was cross filed with the Flordia Commiission on Human Relations, which did not make any adverse finding against Chief DeVito.

WHEREFORE, plaintiff, District Chief Christopher DeVito prays that this Court will:

*One*, determine that Palm Beach County has discriminated against Chief DeVito because of his sex, in violation of the Florida Civil Rights Act of 1992;

*Two*, award Chief DeVito damages;

*Three*, enjoin Palm Beach County to revoke the reinstate Chief DeVito;

*Four*, award Chief DeVito his reasonable attorney's fees and litigation expenses, and

*Five*, grant such other and further relief as is just.

**Demand for Jury Trial**

Plaintiff, District Chief Christopher DeVito, demands trial by jury on all issues so triable.

Respectfully Submitted,

*/s/   William R. Amlong*
WILLIAM R. AMLONG
Florida Bar No.: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No.: 275565
KAmlong@TheAmlongFirm.com

THE AMLONG FIRM
500 Northeast Fourth Street
Suite 101
Fort Lauderdale, Florida 33301-1154
(954) 462-1983
(954) 523-3192 (fax)

**Certificate of Service**

I HEREBY certify that the above and foregoing was electronically filed through the Southern District of Florida ECF system and thereby delivered to all counsel of record.

*/s/   William R. Amlong*
WILLIAM R. AMLONG